OPINION
 

 Per Curiam:
 

 Appellants (collectively the Margraves) appeal from a district court order granting summary judgment in favor of respondents (collectively Dermody). In 1957, the Margraves owned a ranch in the vicinity of the Southeast corner of East Plumb Lane and Kietzke Lane in Reno. Appurtenant to this ranch were two water rights, Claim No. 414 and Claim No. 504, both of which arose under the Orr Ditch Decree.
 
 See
 
 United States of America v. Orr Water Ditch Company, et al., Equity Docket No. A-3 in the U.S. District Court for the District of Nevada (1944). Claim No. 414 water was transported to the Margraves’ property via the Cochran
 
 *826
 
 Ditch, whereas Claim No. 504 water was transported via the Scott Ranch Ditch.
 

 As acknowledged in the briefs of both parties, in 1957, the Nevada State Engineer approved the Margraves’ application to change the place of use of Claim No. 504 water rights from the Scott Ranch Ditch to the place of use of the Claim No. 414 water rights, the Cochran Ditch.
 
 [1]
 
 The Margraves assert that the change was made because the Scott Ranch Ditch had become closed and unreliable.
 

 In 1961, the Margraves sold 11.9 acres of the ranch to Charles A. Steen (Steen), appurtenant to which, the Margraves contend, were small portions of Claim Nos. 414 and 504 water rights. Although the recorded deed from the 1961 conveyance did not specify that any particular water rights would be conveyed, it did state that the property would be conveyed “together with ... the tenements, hereditaments and appurtenances . . . . ”
 

 On June 1, 1962, the Margraves entered into a written agreement with Steen (the Agreement) to sell Steen an additional 67 acres. Appurtenant to 30.6 acres of this parcel were the Claim No. 504 and Claim No. 414 water rights. The Agreement provided that the property conveyed was “[tjogether with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining . . . . ” However, the Agreement further provided that the sale was to be “exclusive of any and all water rights other than Scott Ranch ditch water.” Further, the Agreement specifically stated, “It is further mutually understood and agreed that all other water rights appurtenant to said property, consisting of Cochran Ditch water rights, shall be retained by sellers.” The October 11, 1962 deed conveying the property (the Deed) stated that the land was conveyed with
 

 
 *827
 
 any and all water and water rights, ditches and ditch rights appurtenant thereto or used in connection therewith, other than what is known as “Cochran Ditch” water rights, which last-named water rights are expressly reserved unto parties of the first part and excluded from the operation of this conveyance.
 

 Thereafter, the Margraves continued to pay all the annual assessments on the water rights to the State Engineer and the Federal Water Master until 1992. The Margraves state that both agencies listed the Margraves as the owners of the water rights until 1991. Dermody acquired the property from Steen’s successors in interest. ■
 

 On July 19, 1991, after learning of Dermody’s claim to Claim No. 504 water rights, the Margraves filed a complaint to quiet title to the subject water rights. The complaint alleged that the Margraves possessed the Claim No. 504 water rights, except for 23.7 acre feet of Claim No. 504 water rights which were conveyed to Steen in the Deed. The district court granted summary judgment in favor of Dermody. The district court found as a matter of law that the Agreement and Deed were unambiguous and that the disputed water rights in Claim No. 504 were conveyed to Steen, Dermody’s predecessors in interest.
 

 Summary judgment is appropriate where no genuine issue of material fact remains for trial and one party is entitled to judgment as a matter of law.
 
 See
 
 NRCP 56; Burnett v. C.B.A. Security Service, 107 Nev. 787, 788, 820 P.2d 750, 751 (1991). Whether or not a document is ambiguous is a question of law for the court. Wooden v. First Security Bank of Idaho, 822 P.2d 995, 997 (Idaho 1991); Trujillo v. CS Cattle Co., 790 P.2d 502, 506 (N.M. 1990). A contract is ambiguous if it is reasonably susceptible to more than one interpretation. Agrie. Aviation v. Clark Co. Bd. Comm’rs, 106 Nev. 396, 398, 794 P.2d 710, 712 (1990). Where the meaning of a contract is ambiguous and resort to extrinsic evidence is required to ascertain the intention of the parties, summary judgment is inappropriate in the face of contradictory or conflicting evidence. Mullis v. Nevada National Bank, 98 Nev. 510, 513, 654 P.2d 533, 536 (1982);
 
 see also
 
 Agric. Aviation, 106 Nev. at 400, 794 P.2d at 713.
 

 The Margraves contend that the district court erred in finding that the Agreement and Deed were unambiguous since there were certain terms in the instruments which were not self-explanatory
 
 *828
 
 and could only be understood through the use of extrinsic evidence. The Margraves are correct. In granting or reserving water rights, the phrases “Scott Ranch Ditch water” and “Cochran Ditch water rights” in the Agreement and the phrase “known as the ‘Cochran Ditch’ water rights” in the Deed are ambiguous since they do not set forth the specific water rights to which they refer. Scott Ranch Ditch and Cochran Ditch are simply the means through which certain water rights were transported; they are not the water rights themselves. Consequently, we hold that the district court erred in finding the documents unambiguous.
 

 Dermody asserts that it is a well settled rule that in order for the grantor of property to reserve water rights which are appurtenant to the property conveyed, the grantor must specifically express this intent within the deed. If water rights are not expressly reserved, they accompany the land in the conveyance.
 
 See
 
 NRS 533.040; Adams v. Chilcott, 597 P.2d 1140, 1145 (Mont. 1979) (appurtenant water rights accompany the land if property is transferred without an express reservation thereof); Roberts v. Roberts, 584 P.2d 378, 379 (Utah 1978) (same).
 

 Dermody’s argument misses the point. There is no question that water rights must be specifically reserved. Nor is there any question that the water rights were in fact specifically reserved. The question created by the ambiguous instruments in this case is
 
 which
 
 water rights were actually reserved. The flaw in Dermo-dy’s argument is his assumption that “Scott Ranch ditch water consists of Claim 504 water rights and . . . Cochran Ditch water consists of Claim 414 water rights.” The district court apparently shared this assumption.
 

 However, this assumption is not inevitably compelled by the language within the four corners of the instruments. There is nothing within the instruments necessitating the conclusion that Claim No. 504 water rights are synonymous with the phrase “Scott Ranch Ditch water” or that Claim No. 414 water rights are synonymous with the phrases “Cochran Ditch water rights,” or “what is known as ‘Cochran Ditch’ water rights.”
 

 The Margraves’ contention is that since there was no mention of water rights in the 1961 deed conveying the initial 11.9 acres to Steen, Steen’s agent wished to clarify that Steen received a portion of Claim No 504 water rights in the 1961 conveyance. Consequently, the Margraves argue, the 1962 deed expressly conveyed the water rights, including portions of Claim No. 504, which should have been expressly conveyed in the 1961 deed. Additionally, the Margraves argue, the phrase in the Deed reserving “what is known as ‘Cochran Ditch’ water rights” reserved all of the water rights, including Claim No. 414 and most of the
 
 *829
 
 Claim No. 504 water rights, which were not conveyed in the 1961 deed. The Margraves assert that prior to the 1962 conveyance, the reserved Claim Nos. 504 and 414 water rights were both transported via the Cochran Ditch because of the unreliability of the Scott Ranch Ditch.
 

 We do not suggest that the Margraves’ interpretation of the instruments is correct, nor do we rule on the merits of this case. We simply conclude that the instruments in this case are ambiguous and that summary judgment was therefore inappropriate.
 

 The Margraves assert that since the instruments were ambiguous, the district court erred in failing to admit parole evidence to ascertain the meaning of the instruments and the intent of the parties. The Margraves sought the admission of affidavits from both Frank Margrave and from Steen’s agent in order to prove the existence of a prior oral agreement on the meaning of the terms in the documents and the description of which water rights were conveyed or reserved. The Margraves also sought to introduce the records of the Nevada State Engineer’s office and the Federal Water Master, the two governmental authorities administering Truckee water rights. They assert that these records depicted the Margraves as the rightful owners of the portion of Claim 504 at issue and show that the Margraves paid all assessments associated with ownership of the disputed water rights.
 

 Under the parole evidence rule, extrinsic evidence cannot be introduced to aid the court in interpreting a contract unless the contract contains ambiguities.
 
 See
 
 Farmers Ins. Exchange v. Young, 108 Nev. 328, 333 n.3, 832 P.2d 376, 379 n.3 (1992); Canfield v. Gill, 101 Nev. 170, 171 n.1, 697 P.2d 476, 477 n.1 (1985); Crow-Spieker #23 v. Robinson, 97 Nev. 302, 305, 629 P.2d 1198, 1199 (1981). Since the Agreement and Deed are ambiguous, parole evidence should have been admitted to aid in their interpretation.
 

 The district court further found as a matter of law that Dermody was a bona fide purchaser for value because Dermody had no knowledge or notice of any hidden intent to reserve water rights. This was error. The instant case does not involve a question of any “hidden intent” to reserve water rights. As stated, under the Agreement and Deed, water rights were
 
 expressly
 
 reserved. The question which must be resolved is whether the disputed water rights in Claim No. 504 were reserved by the Margraves or conveyed to Dermody’s predecessor in interest by the terms of the Agreement and Deed.
 

 We reverse the district court’s order of summary judgment. In
 
 *830
 
 light of our disposition of this case, we need not reach the Margraves’ other contentions. Additionally, Dermody’s request for costs and fees is denied.
 
 See
 
 NRAP 38; NRCP 11.
 
 [2]
 

 [1]
 

 Despite these statements by both parties, in its findings of fact, the district court found that the Margraves “never submitted an application to change the point of diversion or place of use of Claim No. 504 water rights pursuant to NRS 533.325 and 533.345(1).” These statutes require a party wishing to change the place of water use to submit an application with the state engineer for a permit. Additionally, NRS 533.345(1) requires that the application contain “such information as may be necessary to a full understanding of the proposed change.” The district court’s finding that no application was submitted is not supported by any evidence in the record. Indeed, as cited by Dermody, the Certificate of Appropriation issued by the State Engineer, which changes the place of use of Claim No. 504 water rights, appears in the record. Therefore, in light of the admission by both parties that such a transfer occurred and the inclusion in the record of the certificate transferring use, such a finding appears clearly erroneous. Since we cannot make that determination on the record before us, however, we order the district court, on remand, to reconsider this finding after reviewing the certificate and hearing argument by the parties.
 

 [2]
 

 The Honorable Cliff Young, Justice, has voluntarily disqualified himself from consideration of this case.